**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| FEDERAL ELECTION COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-444-M |
| | § | |
| JODY L. NOVACEK, REPUBLICAN | § | |
| VICTORY COMMITTEE, INC., a/k/a | § | |
| Republican Victory 2004 Committee, BPO, | § | |
| INC., and BPO ADVANTAGE, LP, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment [Docket Entry #18]. For the reasons explained below, the Motion is **GRANTED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Federal Election Commission ("FEC" or "the Commission") is the independent agency of the United States government with exclusive jurisdiction over the administration, interpretation and civil enforcement of the Federal Election Campaign Act, as amended, 2 U.S.C. §§ 431-55 (the "Act").[1]

Defendant Jody L. Novacek is an individual with previous experience working in telemarketing fundraising for political clients. Novacek created, operated and wholly controlled Defendants Republican Victory Committee ("RVC"), BPO, Inc. and BPO Advantage LP (the BPO entities are together referenced as "BPO").

In June 2004, the Republican National Committee ("RNC") filed an administrative complaint with the Commission, alleging that RVC had made certain fundraising solicitations to

---

[1] *See* 2 U.S.C. § 437c(b)(1) (2006) ("The Commission shall administer, seek to obtain compliance with, and formulate policy with respect to, this Act . . . . The Commission shall have exclusive jurisdiction with respect to the civil enforcement of such provisions."); *id.* §§ 437d(a), 437g.

the public in violation of the Act.[2] Novacek was notified of the complaint and she submitted a response.

On January 31, 2005, the Commission determined that there was reason to believe that the Defendants had violated the Act, and initiated an investigation pursuant to the provisions of the Act.[3] The investigation revealed that Novacek, acting through RVC and BPO, made fraudulent misrepresentations to the general public stating or implying that RVC was raising money for the Republican Party. In addition, Novacek and RVC failed to include in their communications a required disclaimer in the manner specified by the Act.

Novacek hired Apex CoVantage, L.L.C. ("Apex") to make telemarketing fundraising calls to solicit donations to RVC during the first half of 2004.[4] Novacek provided Apex with a list of potential contributors to call and a call script she created.[5] Apex used its call center in India to make the fundraising calls.[6] Apex or Novacek followed up on those calls with mailings requesting call recipients to mail in the contributions they had agreed to make.[7] Novacek made all financial and contractual arrangements for this fundraising campaign through BPO.[8] RVC received roughly $50,000 as a result of these solicitations.[9]

In June 2004, Novacek received a cease-and-desist letter from the RNC demanding that she stop holding out RVC to the public as an official representative of the Republican Party.[10] Despite receiving this letter, beginning in October 2004, Novacek and RVC engaged in a second series of solicitation calls using a different contractor, Advantage Direct Communications, Inc.

---

[2] Under the Act, any person may file an administrative complaint with the Commission, alleging a violation of the Act. 2 U.S.C. § 437g(a)(1).
[3] 2 U.S.C. § 437g(a)(2).
[4] *See* Appx. at 109-12 (Novacek's deposition). All references to the Appendix are to the Commission's appendix.
[5] *See id.* at 118.
[6] *See id.* at 110, 114-15.
[7] *See id.* at 182-83.
[8] *See id*. at 111-12.
[9] *See id*. at 371 (Apex-RVC program summary); 207-208 (Novacek's deposition).
[10] *See id.* at 366-67 (RNC letter); 160-62 (Novacek's deposition); Novacek Affidavit at ¶ 10.

("Advantage").[11] Novacek did not alter her call scripts to clarify RVC's status. RVC received over $10,000 in contributions from this second series of fundraising calls.[12]

The Defendants never made any contributions to any political candidate or committee.[13]

In October 2008, the Commission found probable cause to believe that the Defendants had violated the Act. The Commission thereafter sought, unsuccessfully, to enter into a conciliation agreement with the Defendants. The filing of this civil action followed, and the Commission now moves for summary judgment on its claims for a declaratory judgment, injunctive relief, and civil penalties.

## II. ANALYSIS

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[14] If a reasonable jury could return a verdict for the non-moving party, then there is a genuine issue of material fact.[15] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[16] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[17] Although "factual controversies are construed in the light most favorable to the nonmovant," there must be

---

[11] *See* Appx. at 559-60 (Affidavit of Jeff Butzke).
[12] *See id.* at 227-28 (Novacek Deposition); *id.* at 756-59 (RVC bank account statements).
[13] *See id.* at 266 (Novacek's deposition).
[14] Fed. R. Civ. P. 56(c).
[15] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[16] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).
[17] *See* Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 250; *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

evidence from both parties of an actual controversy.[18]

    A. Violations of 2 U.S.C. §§ 441h(b)

2 U.S.C. § 441h(b) provides:

> No person shall: (1) fraudulently misrepresent the person as speaking, writing, or otherwise acting for or on behalf of any candidate or political party or employee or agent thereof for the purpose of soliciting contributions or donations; or (2) willfully and knowingly participate in or conspire to participate in any plan, scheme, or design to violate paragraph (1).[19]

Even absent an express misrepresentation, a representation is fraudulent if it was reasonably calculated to deceive persons of ordinary prudence and comprehension.[20] A violation is knowing and willful if the defendant "acted deliberately and with knowledge" that the representation was false.[21] The evidence does not have to show that a defendant had specific knowledge of the regulations or conclusively demonstrate a conspirator's state of mind, if there are facts and circumstances from which a jury could reasonably infer that a defendant knew that her conduct was unauthorized and illegal.[22]

The record supports the Commission's contention that there are no genuine issues of material fact as to its allegations that the Defendants knowingly and willfully violated 2 U.S.C. § 441h(b)(1) and (2).[23]

---

[18] *Lynch Props.*, 140 F.3d at 625 (citation omitted).
[19] *Id.* (2006).
[20] *Cf. United States v. Thomas*, 377 F.3d 232, 242 (2d Cir. 2004) (citing, *inter alia*, *Silverman v. United States*, 213 F.2d 405 (5th Cir. 1954) (holding that, if the mails are used in a scheme devised with the intent to defraud, the fact that there is no misrepresentation of a single existing fact makes no difference in the fraudulent nature of the scheme)).
[21] *Cf. United States v. Hopkins*, 916 F.2d 207, 214-15 (5th Cir. 1990) (holding that the jury was entitled to infer knowing and willful behavior from the defendants' elaborate scheme for disguising their political contributions); *see also* 122 Cong. Rec. 12197, 12199 (1976) (defining the phrase "knowing and willful" as referring to "actions taken with full knowledge of all the facts and a recognition that the action is prohibited by law").
[22] *Id.* at 213 (quoting *United States v. Bordelon*, 871 F.2d 491, 494 (5th Cir. 1989), cert. denied, 439 U.S. 838 (1989)).
[23] In making this determination, the Court was forced to sift through large quanta of evidence to ferret out support for the Commission's assertions, a task which the Commission failed to satisfactorily perform before filing its motion. In multiple instances, the Commission either did not provide citations to the record, or the citations provided were insufficient to support the proposition for which they were cited.

Novacek admits that she drafted the solicitation scripts and hired, through BPO, Apex and Advantage to make the telemarketing solicitations on behalf of RVC.[24] She also admits that the scripts repeatedly refer to the Republican Party.[25] If the solicitee was not at home, the Apex script required callers to ask whether the person who answered the phone was a registered Republican.[26] Once the pitch began, callers would ask for support for "our state candidates and President Bush's agenda" because "[i]t's going to be tough to beat the Democrats this fall."[27] The callers would explain, "Your financial help is critical so Republicans can win at the state and local levels."[28] The callers did not state that RVC was not authorized by the Republican Party or any candidate. On a number of occasions, the callers explicitly stated that the calls were on behalf of the Republican Party.[29]

Novacek does not deny that she authored the follow-up letters, which also refer multiple times to the Republican Party:

- "Contributions or gifts to the Republican Party are not deductible as charitable contributions for federal income tax purposes."

- "I'm grateful our Party can count on your help to support Republicans across the country win elections."

- "The Republican Party can count on my support to help candidates at the state & local level."

- "I'm proud to help the Republican Party prepare for the November election."[30]

Many people believed they were contributing to the Republican Party, the RNC, the GOP, or Bush-Cheney '04, as evidenced by the fact that nearly one hundred checks deposited by

---

[24] *See* Appx. at 109-12, 225-26.
[25] *See* Novacek's Response at 7.
[26] *See* Appx. at 339 (authorized script); *see also id*. at 628, 631 (transcripts of recorded calls).
[27] *Id*. at 339.
[28] *Id.*
[29] *See id*. at 613, 616, 619, 621, 623, 628 (transcripts of recorded calls).
[30] *Id.* at 344 (follow-up letter template); *see also* Novacek's Response at 7.

Novacek were either made payable to those organizations, or the memo lines indicated that the money was intended for those entities.[31] Novacek admits that she knew solicitees were confused as to the entity calling, because they would ask for information about the RNC or the Bush-Cheney '04 campaign, or would send checks made out to those entities.[32]

Novacek admits that after receiving a cease-and-desist letter from the RNC, she and RVC engaged in a second, similar series of solicitation calls through Advantage, from which RVC received over $10,000.[33] Novacek again provided call lists and scripts. The calls solicited funds from people who had previously contributed to RVC.[34]

The script used by Advantage stated that the solicitee had "supported our Committee in the past." The caller further explained:

> [T]he Presidential election is very close—which means our state and local candidate races could be at risk. Everything hinges on getting Republicans to the polls in two weeks. The Democrats are planning a massive Get-Out-The-Vote effort in (STATE) and we need your help to counter this. Otherwise the tax and spend liberals could win races from the White House to the state house and local offices. It's crunch time and we need support to get every Republican to the polls. Help us defeat Democrats with an emergency gift of $(ASK 1), to be used for Get-Out-The-Vote efforts, **OKAY!**.[35]

The caller informed the solicitee that "political contributions are not tax deductible," but again did not inform the solicitee that the solicitation was not approved by a political party or a political candidate.[36]

RVC never made any contributions to any candidate or any other political entity.[37] After paying Apex and Advantage, Novacek appears to have directed the remaining funds to the BPO

---

[31] *See id.* at 639-747.
[32] *Id.* at 142-45.
[33] *See* Novacek's Amended Response at 8; Appx. at 385-89 (RVC-Advantage script); *id.* at 756-59 (RVC bank account statements).
[34] *See id.* at 559-60 (Butzke Affidavit).
[35] *Id.* at 385 (RVC-Advantage script); *see also id.* at 560 (Butze affidavit) (explaining that Advantage used the script provided by Novacek for its fundraising calls in October 2004).
[36] *Id.* at 389.
[37] *Id.* at 266.

entities.[38]

Novacek fails to designate specific facts beyond the pleadings to prove the existence of any genuine issues of material fact that would show that summary judgment for the Commission is inappropriate. Novacek's disputation of immaterial facts does not necessitate a trial,[39] and the remainder of her Response is composed of unsubstantiated assertions, suggestions and arguments, which are not competent summary judgment evidence.[40]

Novacek first alleges that Tom Maddux, the head of Apex, was aware that the RNC would not approve overseas outsourcing of fundraising, and therefore must have been aware that the fundraising work performed by Apex's call center in India was not for the RNC.[41] Although there is evidence in the record supporting this contention,[42] Novacek's discussions with Maddux and Apex are relevant only as to whether those non-parties were also complicit in the fraudulent scheme. While the credibility of Maddux's deposition testimony, which provides compelling evidence of Novacek's willful and knowing violation, is challenged by his giving testimony inconsistent with Novacek's affidavit on the issue of outsourcing, his testimony is not necessary to demonstrate that the fundraising calls and letters Apex sent out at Novacek's direction fraudulently misrepresented that they were on behalf of the Republican Party.

Novacek admits that she wrote the script and the "rebuttals" Apex used in responding to

---

[38] *Id.* at 453-65.
[39] *See Cantu v. Jackson Nat'l Life Ins. Co.*, 579 F.3d 434, 438 (5th Cir. 2009) ("Disputes about material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted)).
[40] *See Mace v. City of Palestine*, 333 F.3d 621, 624 n.7 (5th Cir. 2003) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)) ("Finally, it is well established that a nonmovant cannot overcome summary judgment with conclusory allegations and unsubstantiated assertions."); *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."); *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 164 (5th Cir. 1991) (holding that the nonmovant's "burden of ensuring that the evidence presented is sufficient to establish a *genuine issue* of material fact" may be satisfied "only [by] evidence—not argument . . . .").
[41] *See* Novacek's Amended Response at 3.
[42] *See* Appx. at 149-52, 158-60.

callers who expressed confusion during the calls.[43] These "rebuttals" instructed callers to direct solicitees to the actual Bush-Cheney '04 and RNC websites if they requested information or paraphernalia related to Bush-Cheney '04 or the Republican Party, and then to go immediately back to the script, without pausing, and without clarifying the misimpression as to who was soliciting the contribution.[44] Novacek argues that the Defendants "should not have to defend the fact that they conducted quality telemarketing practices including taking the time to be helpful to a customer even if that wasn't going to make a pledge."[45] This argument is not responsive to the Commission's claim that such "helpful" responses were actually misleading misrepresentations designed to further the impression that RVC was associated with the Republican Party.

Novacek next suggests that the call transcripts submitted by the Commission are actually transcripts of "pirate scripts," unauthorized scripts written by the call centers themselves.[46] She maintains that she would not have authorized these "pirate scripts" because they do not seek credit card pledges, which are a "key objective" of RNC fundraising calls because of the bonuses paid by the RNC for credit card donations.[47] This argument is wholly irrelevant because it is based on the false premise that Novacek was raising money for the RNC.

Furthermore, the transcripts submitted by the Commission closely track the script authored by Novacek, and Novacek does not identify any specific non-trivial portion of the submitted transcripts that were not authorized by her.[48] In fact, Novacek admits that she authorized the material change in the opening statement of the submitted scripts, which identified the organization placing the call, from "Republican Victory Committee" to "Republican Party."[49]

---

[43] *See id.* at 126-26, 141 (Novacek deposition).
[44] *See id.* at 343 (rebuttal script).
[45] *See* Novacek's Amended Response at 4.
[46] *See id.* at 4-5.
[47] *See id.* at 5.
[48] *Compare* Appx. at 495-96 (script) *with* Appx. at 623-24 (transcript of recorded call).
[49] *See* Novacek's Declaration at ¶ 4.

Novacek suggests that the eight submitted transcripts specifically referenced by the Commission in its Motion for Summary Judgment may not be an accurate sample of the calls made by Apex, and suggests that the Commission should have provided additional evidence from the call centers to provide a more complete picture of the operations.[50]  However, because the Commission carried its initial evidentiary burden, the burden shifts to Novacek to designate specific facts beyond the pleadings to show that summary judgment is inappropriate.

To the extent that Novacek's argument is a motion for more discovery under Federal Rule of Civil Procedure 56(f), it is DENIED.  Novacek fails to show why she needs additional discovery, and how that discovery will create a genuine issue of material fact, rather than simply being cumulative or immaterial.[51]  "A party cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."[52]  Novacek does not allege that the transcripts submitted by the Commission are unrepresentative of the thousands of calls placed by Apex and Advantage; she simply states that "[t]he fact that the FEC did not secure the entire digitally recorded evidence consisting of thousands of phone calls puts into question the completeness and reliability of these selected transcripts," without offering any evidence to support the inference that more transcripts would undercut the basis for the Commission's Motion.[53]  Nor does she show how obtaining details of the calls such as the solicitee's address, telephone number, and the times and dates of each call attempt are material to the issues in this

---

[50] *See* Novacek's Amended Response at 6-7.
[51] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 265 (1968) (explaining that Rule 56(f) only "provides for comparatively limited discovery for the purpose of showing facts sufficient to withstand a summary judgment motion").
[52] *Adams*, 465 F.3d at 162 (quoting *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333, n.5 (5th Cir. 2002); *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004)) (internal quotation marks omitted).
[53] *See* Novacek's Amended Response at 7.

case.[54]

Novacek also speculates that the recordings and transcripts offered by the Commission in support of its Motion for Summary Judgment may have been fabricated.[55] However, the Commission has offered evidence, in the form of a sworn affidavit from Apex's Chief Commercial Officer, that the twenty recordings submitted by the Commission are true and accurate recordings of phone solicitations Apex made on behalf of RVC in the first half of 2004.[56] Novacek offers no substantiation for her speculation that the recordings are counterfeit, and the Court is therefore not required to give her suggestion any weight.[57]

Finally, Novacek argues that, although she represented to the public that she was raising funds for the Republican Party, she did not commit any "knowing and intentional" fraud and misrepresentation because "[t]he RNC does not own the term 'Republican Party.'"[58] This position is unsupportable. The Republican Party is an unincorporated association under the general management of the Republican National Committee.[59] The clear implication of the script that Novacek wrote is that donations were being solicited for the Republican Party and/or the RNC. None of this money was ever contributed to any political candidate or committee, Republican or otherwise.[60]

Novacek's failure to rebut the Commission's summary judgment motion is not excused

---

[54] *See id.* at 6.
[55] *See id.* at 6, 7.
[56] *See* Appx. at 602 (Vasan Declaration).
[57] *See Mace*, 333 F.3d at 624 n.7 (citing *Little*, 37 F.3d at 1075) ("Finally, it is well established that a nonmovant cannot overcome summary judgment with conclusory allegations and unsubstantiated assertions."); *Tyler v. Runyon*, 70 F.3d 458, 469 (7th Cir. 1995) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995)) (internal quotation marks omitted)).
[58] Novacek's Amended Response at 7, 8.
[59] *See* Republican Party, *The Rules of the Republican Party*, at 1 (2008), http://gop.com/images/legal/2008_RULES_Adopted.pdf (last visited Mar. 17, 2010) ("The Republican National Committee shall have the general management of the Republican Party, based upon the rules adopted by the Republican National Convention.").
[60] *See* Appx. at 266 (Novacek's deposition).

because of her *pro se* status.[61] While this Court liberally construes a *pro se* litigant's pleadings, Novacek must point to specific evidence in the record to support her opposition to the Commission's Motion for Summary Judgment.[62]

Novacek fails to present competent evidence of any actual controversy of material fact warranting a trial on the Commission's claims that she and the other Defendants violated 2 U.S.C. § 441h(b). The Commission's Motion is therefore GRANTED as to those claims.

B. Violations of 2 U.S.C. § 441d(a) and (c)

Whenever a person makes a public communication that solicits a contribution, the solicitation must contain a disclaimer.[63] A public communication, for this purpose, includes any communication by mass mail or by telephone bank.[64] If not authorized by a candidate or authorized political committee of a candidate, the disclaimer must state such and must also state the name, street address, and telephone number or Internet address of the person who paid for the communication.[65] In printed material, the disclaimer must be presented in a clear and conspicuous manner and be of sufficient type size to be clearly readable, and must be contained in a printed box set apart from the other content of the communication.[66]

In the subject calls, the callers did not state RVC's permanent address, phone number or website address, or state that the solicitation was not authorized by a candidate or candidate committee.[67] In RVC's mailings, the written material failed to properly format that information

---

[61] *See Morales v. Boyd*, 304 F. App'x 315, 318 (5th Cir. 2008); *Ellis v. Principi*, 246 F. App'x 867, 869 (5th Cir. 2007) ("[P]laintiff's *pro se* status does not exempt her from the usual evidentiary requirements of summary judgment." (citing *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995))).
[62] *See Sony Pictures Home Enter. Inc. v. Lott*, 255 F. App'x 878, 880 (5th Cir. 2007) (citation omitted).
[63] 2 U.S.C. § 441d(a) (2006); 11 C.F.R. § 110.11(a).
[64] 2 U.S.C. §§ 431(22), (24); 11 C.F.R. §§ 100.26; *see also* 100.28 (defining "telephone bank" as more than 500 telephone calls of an identical or substantially similar nature within any 30-day period).
[65] 2 U.S.C. § 441d(a)(3); 11 C.F.R. § 110.11(b)(3).
[66] 2 U.S.C. § 441d(c); 11 C.F.R. § 110.11(c)(1), (c)(2)(i)-(ii).
[67] *See* Appx. at 339-40 (Apex call script); *id.* at 385-89 (Advantage call script); *id.* at 613-33 (sample transcripts).

in clearly readable type size in a printed box set apart from the content of the communication.[68]

Novacek does not dispute these facts. Rather, she states that the violations were unintentional.[69] However, Novacek's state of mind is irrelevant here, because intent is not an element of the offense, and the Commission is not requesting the higher civil penalties that would become available if Novacek acted with "knowing and willful" intent.[70]

Novacek further argues that compliance with the statute would not have accomplished Congress's objectives because her envelopes and letterhead contained some of the required information in larger print than required by the statute.[71] This argument is beside the point; Congress has clearly legislated on this subject, and Novacek does not deny that she has failed to comply with the law as it currently stands.

The Commission's Motion is therefore GRANTED as to its claims under 2 U.S.C. § 441d(a) and (c).

C. Judgment against the Corporate Entities

The Commission alternately moves for summary judgment on all claims brought against the corporate Defendants based on their failure to appear and defend in this case. This motion is moot given the Court's decisions above. Even if the Court were to reach the motion, it would be denied as improper. While the law is clear that Novacek, as a non-attorney, may not represent RVC or either of the BPO entities,[72] default judgment, not summary judgment, is the proper vehicle for obtaining judgment against a party on the basis of its failure to appear.

---

[68] *See id.* at 344 (mailing template); *id.* at 578, 580, and 582 (sample mailings).
[69] *See* Novacek's Amended Response at 10-11.
[70] *See* 2 U.S.C. §§ 437g(a)(5)(B), 437g(d).
[71] *See* Novacek's Amended Response at 11.
[72] *See Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984) (holding that "the clear rule is that a corporation as a fictional legal person can only be represented by licensed counsel." (quoting *K.M.A., Inc. v. General Motors Acceptance Corp.*, 652 F.2d 398, 399 (5th Cir. 1982)) (internal quotation marks omitted)). Novacek does not cite any legal support for her position to the contrary.

III. CONCLUSION

For the reasons stated above, the Commission's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED.**

April 14, 2010.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS